IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARY O. WELDON, *et al.*, ) | CASE NO. 1:10 CV 1077 |
| ) | |
| Plaintiffs, ) | JUDGE LESLEY WELLS |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | WILLIAM H. BAUGHMAN, JR. |
| JAMES W. PRESLEY, *et al.*, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendants. ) | |

## Introduction

I have before me on referral[1] a motion by defendants James W. Presley and System Transport, Inc. to enforce statutory, non-catastrophic damage caps and/or motion for partial summary judgment as to injuries allegedly suffered by plaintiffs Mary O. Weldon and Gerald Weldon.[2] The Weldons have responded in opposition to the motion,[3] and defendants have replied to that response.[4] For the reasons that follow, the defendants' motion should be granted.

---

[1] ECF # 26.

[2] ECF # 19.

[3] ECF # 20. On August 1, 2011, the Weldons filed a notice of filing of supplemental expert reports (ECF # 27).

[4] ECF # 21.

## Background

The Weldons allege that on April 5, 2008, defendant James Presley, while performing duties under his employment with defendant System Transport, Inc., negligently drove his motor vehicle into Mary Weldon's automobile while making a lane change.[5] Mary Weldon alleges, as a result, she sustained injuries to her head, neck, shoulders, and back.[6] In addition, she claims to have permanent damage, pain, and suffering and that the pain and suffering will continue in the future.[7] She also seeks economic damages, arising out of the incident, for medical and hospital bills and expects similar damages in the future.[8] Gerald Weldon alleges injury through economic damages and loss of consortium because of his wife's accident-related injury.[9]

**A.    Defendants' motion to enforce statutory non-catastrophic damage caps and/or motion for partial summary judgment**

The defendants brought this motion for partial summary judgment to enforce a statutory damages cap under Ohio Revised Code § 2315.18.[10] The defendants argue[11] that this case is a "tort action" defined by Ohio Revised Code § 2315.18(A)(7), "a civil action for

---

[5] ECF # 1 (Exhibit A - Complaint) at 1-2.

[6] *Id.* (Exhibit A - Complaint) at 2.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] ECF # 19.

[11] *Id.* at 1.

damages for injury or loss to person or property."[12] And there is a lack of evidence showing that plaintiffs suffered the types of injuries required for an exception to the non-economic damages cap. Ohio Revised Code § 2315.18(B)(3) sets out the exceptions:

(a) Permanent and substantial physical deformity, loss of use of a limb or loss of a bodily organ system

(b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life sustaining activities.[13]

The defendants argue that, because no evidence exists showing that the plaintiffs' injuries come under the exceptions to the non-economic damages cap, Ohio Revised Code § 2315.18(E)(2)[14] limits the amount of damages that the plaintiffs can recover, and, therefore, the Court should grant a motion for partial summary judgment.

Defendants rely on (1) James Brodell, M.D.'s medical examination of Mary Weldon, (2) Mary Weldon's deposition transcript, and (3) the Southern District of Ohio decision in *Williams v. Bausch & Lomb Co.*[15]

According to defendants, James Brodell's examination revealed that Mary Weldon "suffered no anatomical or structural alteration of her spine as a result of the accident."[16]

---

[12] Ohio Rev. Code § 2315.18(A)(7).

[13] Ohio Rev. Code §§ 2315.18(B)(3)(a-b).

[14] Ohio Rev. Code § 2315.18(E)(2).

[15] *Williams v. Bausch & Lomb Co.*, No. 2:08-cv-910, 2010 WL 2521753 (S.D. Ohio June 22, 2010).

[16] ECF # 19 at 3 (citing Exhibit A, Attachment 2 at 10).

Also that Mary Weldon's chief complaints were "aching, stiffness and 'burning' about the posterior aspect of her neck, bilateral trapezius and interscapular areas."[17] Therefore, the defendants argue[18] she does not meet the injury requirements of § 2315.18(B)(3)(a) that her injury is a permanent and substantial physical deformity, loss of use of limb or loss of a bodily organ system.[19]

Mary Weldon's deposition transcript, the defendants claim, also shows that her daily activities have not changed substantially after her accident.[20] Defendants contend that her statements support their argument that post-accident, she is still able to "independently care for [her]self and perform life sustaining activities, rendering the exceptions in § 2315.18(B)(3)(b) inapplicable.

Finally, defendants support their argument with *Williams v. Bausch & Lomb Co.*,[21] a Southern District of Ohio case in which the court found the plaintiff subject to an Ohio damages cap despite losing the use of one eye.[22] The defendants contend that if a plaintiff's loss of sight in one eye does not constitute "loss of bodily organ system"[23] or "permanent and

---

[17] *Id.* (citing Exhibit A, Attachment 2 at 2).

[18] ECF # 19 at 3-5.

[19] Ohio Rev. Code § 2315.18(B)(3)(a).

[20] ECF # 19 at 3, 4 (citing Exhibit B, Attachment 3 at 49-50).

[21] *Williams*, 2010 WL 2521753.

[22] ECF # 19 at 4.

[23] Ohio Rev. Code § 2315.18(B)(3)(a).

substantial deformity,"[24] Mary Weldon's injuries "(i.e. muscle sprain / strain / herniated disc.)"[25] must also fall short of the necessary requirements for an exception to the cap.[26]

## B. The Weldons' brief in opposition to defendants' motion for partial summary judgment

The Weldons filed a brief in opposition to defendants' motion for partial summary judgment arguing that genuine issues of material fact exist regarding the severity and permanency of Mary Weldon's injuries sustained as a result of the accident.[27]

The Weldons rely on (1) a letter written by Dave Atteberry, M.D., recommending surgery for Mary Weldon;[28] (2) a letter written by Dr. Atteberry two weeks after Mary Weldon's surgery discussing continuing complaints;[29] (3) Mary Weldon's deposition testimony about the effect of her injuries on the ability to carry out everyday activities;[30] and (4) the Northern District of Ohio's decision in *Bransteter v. Moore*.[31] Based on these

---

[24] *Id.*

[25] ECF # 19 at 4.

[26] *Id.* at 4, 5.

[27] ECF # 20 at 2.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Bransteter v. Moore*, No. 3:09-cv-2, 2009 WL 152317 (N.D. Ohio Jan. 21, 2009).

sources, they argue that the injuries qualify for an exemption under Ohio Revised Code § 2315.18(B)(3).[32]

Dr. Atteberry's letter of March 11, 2009, states, according to the Weldons' brief, that "Mary needed an anterior cervical discectomy and fusion for her cervical radiculopathy."[33] Additionally, the doctor wrote that there is potential for "more surgery in the future" and that other parts of Mary's "spine could also degenerate ... in her lifetime."[34]

Following Mary Weldon's surgery, Dr. Atteberry wrote an additional letter, dated July 20, 2009, informing Mary Weldon's primary care physician, Robert Ciculo, M.D., that despite her surgery, she still complained of "pain, numbness and headaches associated with her injuries sustained in the accident."[35] Additionally Dr. Atteberry informed Dr. Ciculo that Mary reported "the pain in her arm associated with the accident was 'even more frequent' than before the surgery."[36]

The Weldons also cite to Mary's deposition transcript to show the impact of her injuries on her life.[37] They proffer that there are many tasks Mary was able to do prior to the accident that she can no longer perform as a result of her injuries[38] including, "running a

---

[32] ECF # 20 at 4.

[33] ECF # 20 at 2 (citing Attachment, Exhibit 1 at 2).

[34] *Id.*

[35] ECF # 20 at 2 (citing Attachment Exhibit 2 at 1).

[36] *Id.*

[37] ECF # 20 at 2.

[38] *Id.*

-6-

sweeper, moving furniture around in her home, and performing yard maintenance including weed whacking and cutting the grass."[39] They argue that Mary incurred a "permanent physical functional injury"[40] as a result of the accident.[41]

Finally, the Weldons cite *Bransteter v. Moore*, wherein the court denied a defendant's motion to extend the Ohio damages cap to a woman who had undergone surgeries that resulted in scarring. The court found that whether or not the scarring qualified as a "permanent and substantial physical deformity"[42] presented an issue for the jury to resolve.[43] The Weldons contend that the reasoning of the *Bransteter* court should extend to this case because Mary underwent surgery to stabilize the vertebrae in her spine and "it raises a genuine issue of material fact as to whether her injuries are a 'permanent and substantial physical deformity.'[44]"[45]

---

[39] ECF # 20 at 2 (citing Mary Weldon Deposition at 50).

[40] Ohio Rev. Code § 2315.18(B)(3)(b).

[41] ECF # 20 at 3-4.

[42] Ohio Rev. Code § 2315.18(B)(3)(a).

[43] ECF # 20 at 4.

[44] Ohio Rev. Code § 2315.18(B)(3)(a).

[45] ECF # 20 at 4.

## C. Defendants' reply in support of motion to enforce statutory non-catastrophic damage caps

In response to the brief in opposition, the defendants' reply makes two arguments.[46] First, the defendants submit that the Weldons failed to present sufficient evidence to create a genuine issue of material fact as to Mary Weldon's suffering a "permanent and substantial physical deformity, loss of use of a limb or loss of a bodily organ system;[47]"[48] Second, the defendants contend that the Weldons failed to present sufficient evidence to create a genuine issue of material fact that Mary Weldon suffered a "permanent physical injury that permanently prevents the injured person from being able to independently care for self and perform life sustaining activities.[49]"[50]

Specifically, the defendants state that the letters attached to the Weldons' brief in opposition should not be considered as admissible evidence.[51] In addition, regardless of their admissibility, they argue that Dr. Atteberry's letters do not show that Mary Weldon sustained

---

[46] ECF # 21.

[47] Ohio Rev. Code § 2315.18(B)(3)(a).

[48] ECF # 21 at 1.

[49] Ohio Rev. Code § 2315.18(B)(3)(b).

[50] ECF # 21 at 2.

[51] Defendants have filed a separate motion to strike plaintiffs' exhibits, however; even considering the letters, the Weldons have failed to provide sufficient evidence that creates a genuine issue of material fact.

permanent and substantial injuries.  Defendants also argue that the case plaintiffs cite to, *Bransteter v. Moore*,[52] is easily distinguishable from the case at hand.

## Analysis

### A.   Preliminary Observation

Before analyzing the defendants' motion and the Weldons' opposition, I make the following initial observations:

- Subject matter jurisdiction in this case arises out of diversity of citizenship.[53]  Under the *Erie Doctrine*,[54] federal courts presiding over diversity cases must apply the substantive law of the state's highest court.[55]  If the highest court has not spoken, then the district court must ascertain from all available data, including state appellate decisions, what the state law is and apply it.[56]  The parties agree that Ohio substantive law should apply in this case, and I concur.

- Additionally, consistent with the *Erie Doctrine*, federal law governs the standard of review of a summary judgment motion in a diversity case.[57]

- The defendants have filed a motion to strike exhibits attached to the Weldons' opposition to the motion for partial summary judgment.[58]  Even considering these exhibits, my recommendation will not change.  The motion to strike, therefore, should be denied as moot.

---

[52] *Bransteter*, 2009 WL 152317.

[53] 28 U.S.C. § 1332.

[54] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[55] *Kessler v. Visteon Corp.*, 448 F.3d 326, 329-30 (6th Cir. 2006).

[56] *Id.* at 330.

[57] *Booth Family Trust v. Jeffries*, 640 F.3d 134, 140 (6th Cir. 2011).

[58] ECF # 22.

- The Weldons do not argue that Gerald Weldon's claims should be exempt from the non-economic damages caps.[59]

- The parties agree that this case is a "tort action" as defined by Ohio Revised Code § 2315.18(A)(7).

## B. Standards of review

### 1. *Summary judgment*

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[60] The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[61]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[62] Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[59] ECF # 20

[60] Fed. R. Civ. P. 56(c).

[61] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[62] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

evidentiary standards.[63] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[64]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[65] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[66] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[67]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[68] However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[69]

---

[63] *Id.* at 252.

[64] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[65] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[66] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[67] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[68] *Id.* at 252.

[69] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[70] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[71] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[72]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[73] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

---

[70] *Anderson*, 477 U.S. at 256.

[71] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[72] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[73] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[74]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[75]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[76] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[77] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[78]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can

---

[74] *Id.* at 225-26 (citations omitted).

[75] *Id.* at 226 (citations omitted).

[76] *Anderson*, 477 U.S. at 248.

[77] *Id.* at 249.

[78] *Id.*

-13-

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[79]

## C. Application of standards

The issue presented for determination arises out of Ohio Revised Code § 2315.18. As mentioned, the Weldons and defendants agree that the case before me is a "tort action" as defined by Ohio Revised Code § 2315.18(A)(7). Defendants argue that Mary Weldon should be subject to the damages cap outlined in Ohio Revised Code § 2315.18(B)(2):

> Except as otherwise provided in division (B)(3) of this section, the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the economic loss, as determined by the trier of fact, of the plaintiff in that tort action to a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum of five hundred thousand dollars for each occurrence that is the basis of that tort action.

The Weldons counter that their request for non-economic damages should not be limited by Ohio Revised Code § 2315.18(B)(2) because her injuries meet the requirements for the exception to the cap under either provision of Ohio Revised Code § 2315.18(B)(3):

    a.    Permanent and substantial physical deformity, loss of use of a limb or loss of a bodily organ system

    b.    Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life sustaining activities.

---

[79] *Id.* at 250.

I must determine, therefore, if there is a genuine issue of material fact as to whether or not plaintiff Mary Weldon suffered the type of injuries described in Ohio Revised Code § 2315.18(B)(3).

The Ohio Supreme Court reviewed and upheld the facial constitutionality of the damage caps set forth in Ohio Revised Code § 2315.18(B)(2) in *Arbino v. Johnson & Johnson*.[80] In doing so it discussed the reasons for implementing such caps:

> The General Assembly noted that "[t]he current civil litigation system represents a challenge to the economy of the state of Ohio, which is dependent on business providing essential jobs and creative innovation."[81] According to the General Assembly, "curbing the number of frivolous lawsuits" and providing a "fair, predictable system of civil justice" will prevent "the increase of the cost of dong business," which "threatens Ohio jobs, drives up costs to consumers, and may stifle innovation."[82] In regard to non-economic injuries, it noted that awards for such injuries are inherently subjective and susceptible to improper inflation.[83] It also found that "[i]nflated damage awards create an improper resolution of civil justice claims."[84]

The Court also reasoned that the General Assembly, in deciding that exceptions would only apply to the "most serious injuries," made a policy choice that noneconomic damages exceeding set amounts are not in the best interest of the citizens of Ohio.[85]

---

[80] *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 880 N.E.2d 420 (2007).

[81] *Id.* at 479 (citing S.B. 80 at § 3(A)(1), 125th Gen. Assem., Reg. Sess. (Ohio 2004)).

[82] *Id.* at 482 (citing S.B. 80 at § 3(A)(3), 125th Gen. Assem. Reg. Sess. (Ohio 2004)).

[83] *Id.* (citing *id.* at §§ 3(A)(6)(a), (c) and (d), 125th Gen. Assem. Reg. Sess. (Ohio 2004)).

[84] *Id.* (citing *id.* at (e)).

[85] *Id.* at 432.

-15-

*1.  Mary Weldon's injuries do not fall under the exemption outlined in Ohio Revised Code § 2315.18(B)(3)(a).  Neither her pain, surgery, nor her 4 cm incision scar can be considered a permanent and substantial physical deformity.*

Mary Weldon's injuries are not the type exempt from the damages cap.  The Ohio Supreme Court in *Arbino* characterized the injuries not subject to the damages cap as "catastrophic."[86]  While the General Assembly does not mention them as so, it seems appropriate given both the Ohio Supreme Court's interpretation and the plain language of the statute.

Although no specific definition accompanied Ohio Revised Code § 2315.18(B)(3)(a) for "permanent and substantial physical deformity," the injuries listed help qualify the level of injury suffered.

"Loss of use of a limb" appears fairly straight forward. The Merriam Webster Dictionary defines a limb as a "leg or arm" of a human being.  No longer being able to use an arm or leg certainly seems like a significant injury that the Ohio General Assembly had in mind when creating the exceptions to the damages cap.  The United States District Court for the Southern District of Ohio defined "loss of bodily organ system" in a recent decision.[87] There the court held that the complete loss of sight in one eye fell short of a loss of bodily organ system.[88]  In order for the plaintiff to have suffered a loss of bodily organ system, she

---

[86] *Id.* at 477.

[87] *Williams*, 2010 WL 2521753.

[88] *Id.,* at *4.

needed to have lost complete use of her "ocular system," which she had not, as she was able to see partially out of her other eye.[89]  Given the extreme qualifications required for the other injuries listed, it seems clear that permanent and substantial physical deformity must be severe and objective.

The Weldons contend that whether or not she has suffered a permanent and substantial physical deformity should be left for the jury as there is a question of material fact.  The Weldons cite to *Bransteter v. Moore*, a recent case in which this Court denied a motion for summary judgment to limit damages as to scarring from multiple surgeries after an accident.[90]  This Court held that the scarring could constitute a permanent and substantial deformity, which a jury should decide.[91]  The Court stated that "scarring **may** be so severe as to qualify as serious disfigurement."[92]  Likewise, in *White v. Bannerman*, the Ohio Court of Appeals upheld damages for future injury and the exemption from the damages cap because of injuries to a child's hands and face in the form of severe scarring.[93]

Defendants' motion for partial summary judgment contained an affidavit of Dr. James D. Brodell with an examination summary of Mary Weldon.[94]  During the objective

---

[89] *Id.*

[90] *Bransteter*, 2009 WL 152317.

[91] *Id.* at *2.

[92] *Id.*

[93] *White v. Bannerman*, 2010 WL 3852354 (Ohio Ct. App. 2010).

[94] ECF # 19, Attachment (Exhibit A) Letter by James D. Brodell, M.D. detailing examination of Mary Weldon at 1-11.

portion of his examination of Mary Weldon, he notes that she has, "a right, anterior 4 cm transverse incisional scar."[95] The Weldons contend that the surgery Mary had to "relieve extensive compression of her spinal cord in order to stabilize the vertebrae in her spine raises a genuine issue of material fact as to whether her injuries are a "permanent and substantial physical deformity."[96] The Weldons have failed to show in the record or through additional evidence that her 4 cm incisional scar amounts to a "permanent and substantial physical deformity."

Reasonable minds could not conclude that such a small single scar, merely 4 cm long, amounts to a severe disfigurement. Common experience readily teaches that many people have some type of scar, from childhood roughhousing or surgery. Such incidental scars do not rise to the level of "substantial physical deformities" as required by Ohio Revised Code § 2315.18. Weldon's scar is not equivalent to the multiple scarring at issue in *Bransteter* or the disfigurement of hands and face noted in *White*. Thus, I recommend finding that, as a matter of Ohio law, Weldon's sole scar is not a "substantial physical deformity" that would remove the statutory cap on damages.

The Weldons also argue that the deformity could exist inside Mary Weldon.[97] As discussed previously, Ohio courts have interpreted "permanent and substantial physical deformity" objectively. The Weldons have provided no evidence to support that Mary

---

[95] *Id.* at 5.

[96] ECF # 20 at 4.

[97] *Id.*

-18-

Weldon's surgery under this objective standard resulted in a permanent and substantial physical deformity.

2.  *As a matter of law, Mary Weldon did not suffer permanent physical functional injury that prevents her from being able to independently care for self and perform life sustaining activities. Despite not being able to perform certain household chores, Mary Weldon is still able to care for herself and perform life sustaining activities.*

Defendants argue that the Weldons have failed to offer any evidence that Mary Weldon's injuries prevent her from "being able to independently care for [her]self and perform life sustaining activities."[98] The Weldons argue that Mary has suffered a permanent physical functional injury that has left her unable to perform several "day to day activities."[99]

Ohio Revised Code § 2315.18(B)(3)(b) requires that the injury prevent the injured party from "being able to independently care for self and perform life-sustaining activities." Defendants point to the deposition of Mary Weldon where she was asked what her general day consisted of after the accident, she stated, "I get up, water my plants, do breakfast dishes, straighten up, dust."[100] They also show that not much has changed in Mary Weldon's life after the accident, "Well, same old thing. House cleaning, clothes, grocery shopping, bill paying, just the normal routine."[101]

---

[98] ECF # 21 at 2.

[99] ECF # 20 at 4.

[100] ECF # 19 at 4 (citing Mary Weldon deposition at 49-50).

[101] *Id.*

-19-

In response, the Weldons point to Mary's deposition that she can no longer perform certain tasks as a result of the accident: "running a sweeper, moving furniture around in her home, and performing yard maintenance including weed whacking and cutting the grass."[102] As a matter of law, these limitations will not exclude Mary Weldon from the statutory damages cap.  The statute requires that Mary's injuries prevent her from caring for herself. Her inability to do these household chores, however, is insufficient to defeat the damages cap.

## Conclusion

For the foregoing reasons, I recommend that the defendants' motion for partial summary judgment be granted on the ground that the damage caps under Ohio Revised Code § 2315.18(b)(2) apply to the claims of plaintiff Mary Weldon.

Dated:   August 9, 2011                                         s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[103]

---

[102] ECF # 20 at 2 (citing Mary Weldon deposition at 50).

[103] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).